GUILLERMETY v. DÍAZ & PARDO.

APPEAL from the District Court of San Juan.

No. 306.—Decided December 10, 1908.

PARTNERSHIP—LIABILITY THEREOF—ACTS OF PARTNER.—Where the existence of a partnership is admitted it is liable for the acts of the partners.

EVIDENCE—FINDINGS OF THE TRIAL COURT THEREON.—Where questions of fact are involved it is the province of the trial court to weigh the evidence and determine as to the credibility of the witnesses, and this court will not disturb its findings thereon unless it is shown that the trial court erred.

The facts are stated in the opinion.

*Mr. Sarmiento* for appellants.

*Mr. Guillermety* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an action which was brought by Fidel Guillermety, the respondent against Díaz & Pardo, the appellants, a firm composed of Emilio Díaz and Lorenzo Pardo, to recover $1,012.68 alleged to be due, by them to the plaintiff, for various bills of drugs and medicines sold and delivered, by the plaintiff, to said firm, the defendants, and for which payment, as alleged, had not been made.

The defendants, as a firm, denied liability, alleging that the debt was owing, if at all, solely by Lorenzo Pardo individually.

It is claimed by appellants that, when the firm of Díaz & Pardo was formed, it was agreed between them that Díaz should furnish a certain amount in cash and that Pardo should put into the partnership his credit with the plaintiff, Guillermety, to an equal or similar amount, and that the credit on which the drugs and medicines were purchased was extended solely to Lorenzo Pardo and not to Emilio Díaz or to the firm of Díaz & Pardo. The reason for this arrangement seems to have been that Pardo had been for three years employed in the plaintiff's store and had his confidence and friendship.

The case was tried in the District Court of San Juan, and on the 8th day of May, 1908, judgment was rendered in favor of the plaintiff and against the firm of Díaz & Pardo, the defendants, for $974.46 and legal interest thereon, and costs of suit.

An appeal was taken from this judgment and the transcript was duly filed in this court, and it thereafter came on for hearing on the 17th day of November last, on brief and oral arguments for both parties.

It was proven, on the trial in the court below, that the plaintiff's bookkeeper, on the day when the first bill of goods was purchased, made the charge for the same in the books of the plaintiff against Lorenzo Pardo; but that a few days afterwards, seeing Emilio Díaz, at the plaintiff's drug store in San Juan, someone called his attention to the fact that the man there present, Emilio Díaz, was Lorenzo Pardo's partner in the drug business, and on mentioning that fact to Mr. Guillermety, the proprietor, he was ordered to charge the goods, which had been sold, and which he sold thereafter, to the firm of Díaz & Pardo; that he, the bookkeeper, in order to carry out his orders, simply interlined the name of Díaz after that of Pardo on that page of the ledger where the account against Pardo was entered. It was also shown that drugs and medicines were furnished by the plaintiff to the defendants, from time to time thereafter as they were required, and charged

to the account of the firm; that sometimes they were ordered by Díaz and sometimes by Pardo.

The bookkeeper of the plaintiff further testified in regard to the goods charged against the firm of Díaz & Pardo: "The witness does not recognize the handwriting in document No. 1; it is a delivery receipt or memorandum made by a clerk because very often Díaz came to the pharmacy (plaintiff's), and said to one of the clerks: "Take a note of what I want," and the clerk would take a note and they appear written by one of the plaintiff's clerks in the name of Díaz & Pardo. The second document or memorandum seems to be in the handwriting of Díaz, but the witness is not sure of that, while on the fourth memorandum Pardo's handwriting is easily recognized. No document is signed by Díaz & Pardo as a firm, but nearly all of them are headed Díaz & Pardo. These delivery receipts or memoranda are received in the plaintiff's place of business for the delivery of medicines to the defendant partnership. The majority of delivery receipts or memoranda seem to have been made by Díaz because Pardo's handwriting does not appear; and drugs were sold on orders that they sent to the plaintiff's place of business. The majority of these documents are from Díaz & Pardo and have the seal of their pharmacy in Santurce. On many of them they only stamped the seal of their pharmacy. Very often Díaz would come to the store and say: "Give me three bottles of Scott's Emulsion," and the clerk himself would take a note to charge them in the account and many delivery receipts or memoranda were not signed."

"Since a credit was opened for the partnership both parties went indiscriminately to the store personlly to purchase medicines in the name of the partnership, and contracted debts on behalf of the partnership for goods to stock the pharmacy they had in Santurce."

It was also shown the plaintiff, Guillermety, wrote a letter to Pardo urging more prompt payment at the end of each

month and the payment of larger sums monthly so as to keep the bill from growing too large.

Carefully examining the facts as shown in the record there is found to be no fact proven that is inconsistent with the liability of the firm as such to the plaintiff for the value of the goods purchased. They were delivered to the firm of Díaz & Pardo, presumably at their request, and resold at retail in their pharmacy at Santurce.

The firm of Díaz & Pardo received all the benefit of the goods sold and delivered to them. There is nothing to show that plaintiff was a party to any private understanding between the parties defendant or even knew of its existence, if any such agreement in fact was made between them. If the credit was extended to the partner, Pardo, in the first place individually, it appears to have been changed on plaintiff's books a few days thereafter to the firm; and no protest of any kind is shown on the part of either of the defendants against this change. How the credit stood on defendant's books is not shown by the record. It is true the name of the firm was, by the bookkeeper, incorrectly written in the ledger of the plaintiff, but that alone does not alter the liability of the partnership. They received the goods in their store, sold them again at retail, presumably for cash or its equivalent, and they, as a firm, should be required to pay for them.

There is no denial of the partnership and the firm is clearly liable for the acts of both partners or either of them. It is hardly necessary to cite authorities to support so plain a legal principle as this; but reference may be made to the following: *Andrew* v. *Conger,* 131 U. S., Appx. CLXXXIII; *Bell* v. *Morrison,* 26 U. S., 370; *LeRoy* v. *Johnson,* 27 U. S., 186; *Crawford* v. *Willing,* 4 U. S., 286; *Winship* v. *Bank of the United States,* 30 U. S., 529; *Mechen on Partnership,* section 164.

The sections of our statutes cited by the appellants, in their brief and argument (Civil Code of P. R., sec. 1058, and the Law of Evidence, sec. 18, 21, 100, 101 and 162), do not

state any legal principle adverse to the views announced herein. The flight of Pardo from the Island does not influence the decision of the controversy in any way.

The case as presented is essentially a fact case; the principles of law, applying to the same, being all understood and undisputed. The trial court had all the facts before it, at the time judgment was rendered, and of course possessed superior facilities for weighing the evidence and considering the credibility of witnesses, and we find nothing in the record which would warrant us in holding that the evidence was misunderstood by the trial court or did not justify the judgment rendered. (See 2 Moore on Facts, sec. 1276, p. 1419 *et seq.*) Substantial justice between the parties has been done by the result of the trial in the district court. As we find no reason to disturb the conclusions reached by the court below, the judgment appealed from herein should be affirmed.

*Affirmed.*

Justices Hernández, Figueras and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.