(81 South. 64)

DIXIE INDUSTRIAL CO. v. ATLAS LUMBER CO. (5, Div. 712.)

(Supreme Court of Alabama.    Nov. 28, 1919. On Application for Rehearing, Feb. 13, 1919.)

1. PLEADING    ⊂⊃34(4)—REPLICATION—CONSTRUCTION ON DEMURRER.

Replication, on demurrer, will be construed most strongly against the pleader.

2. APPEAL AND ERROR ⊂⊃1040(15)—REVIEW—HARMLESS ERROR.

Where there are some good and some bad counts, error in overruling demurrer to replication to plea to a bad count cannot be avoided by recourse to a speculation that judgment for plaintiff was predicated upon some theory expressed in different sufficient counts.

Somerville, Gardner, and Thomas, JJ., dissenting.

On Application for Rehearing.

3. PLEADING    ⊂⊃176—REPLICATIONS—TRAVERSE OF PLEA.

In action on contract, replication to plea of non est factum, though in form of confession and avoidance or estoppel, is in legal effect a traverse of the plea, where it alleges facts which, if true, show that defendant did execute the contract.

<hr>

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. PLEADING ⟺196—REPLICATIONS—TRAVERSES·OF PLEA—DEMURRER.**

In action on contract, replication to plea of non est factum, though one of confession and avoidance or estoppel, is demurrable, where in effect it is a mere traverse of the plea.

**5. APPEAL AND ERROR ⟺1040(15)—REVIEW—HARMLESS ERROR—PLEADING.**

In action on contract, the overruling of demurrer to replication to plea of non est factum, where replications, though in form special ones of confession and avoidance or estoppel, stated facts which, if true, showed that defendant did execute the contract, was harmless, such replications being in legal effect traverses to the plea, and the demurrer, by admitting facts stated in replication, admitted contract, entitling plaintiff to affirmative charge.

**6. PLEADING ⟺214(1)—REPLICATIONS—ADMISSIONS—DEMURRER.**

Demurrer to replication admits facts stated therein.

**7. CORPORATIONS ⟺410 — REPRESENTATION BY PRESIDENT—PURCHASES.**

Contract for purchase of machinery with purchase money secured by notes, entered into on the behalf of buyer corporation by its president in active charge of its business, who was, at time of such contract, conducting extensive business operations for buyer, including the buying of machinery and various kinds of supplies and equipments, and executing notes and contracts for it and in its name, and obtaining credit for it in such matters, *held* binding on buyer.

**8. APPEAL AND ERROR ⟺1040(13)—HARMLESS ERROR—PLEADING—OVERRULING OF DEMURRER.**

Overruling of demurrer to a special plea is without injury if the plea amounts to a complete denial or traverse of declaration.

**9. APPEAL AND ERROR ⟺1040(15)—HARMLESS ERROR—DEMURRER TO REPLICATION.**

Overruling of demurrer to a special replication to a plea is harmless where replication amounts to a complete denial or traverse of plea.

Anderson, C. J., and McClellan and Sayre, JJ., dissenting.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Action by the Atlas Lumber Company against the Dixie Industrial Company, both being described as corporations. Judgment for plaintiff, and defendant appeals. Affirmed.

The following counts are directed and set out:

"(16) The plaintiff claims of the defendant the sum of, to wit, fifteen thousand ($15,000.00) dollars for that heretofore, to wit, on the 23d day of October, 1913, the plaintiff and the defendant entered into a contract in writing, a copy of which is hereto attached and marked Exhibit A and made a part of this count; that shortly after, to wit, December, 1913, and to wit, January, 1914, the plaintiff delivered to the defendant on board cars at Montgomery, Alabama, a large part of the articles called for in said contract, and shortly thereafter, to wit, in March, 1914, the defendant waived the loading of the balance of said machinery on board cars by the plaintiff, and accepted the same where it was situated, to wit, near the western part of Montgomery, Alabama, and took possession thereof, and agreed to load and ship said machinery, and to charge the expense of said loading to the plaintiff; and on, to wit, November 22, 1913, the defendant executed and delivered to the plaintiff its nine (9) promissory notes payable to the plaintiff, all dated November 22, 1913, five (5) for four hundred twenty-five ($425.00) dollars each, payable the 1st days of June, July, August, September, and October, 1914, respectively; one (1) for three hundred seventy-five ($375.00) dollars, payable November 1, 1914; three for twenty-five hundred ($2,500.00) dollars each, payable the 1st days of November, 1915, 1916, 1917, respectively; that defendant failed to pay any of said notes, and in accordance with the terms of said contract all of the same have long since become due and are wholly unpaid; that it was provided in said contract and also in said notes that, if defendant failed to pay any of said notes when due, it would pay all costs and damages sustained by the plaintiff on account thereof, including reasonable attorney's fees incurred by it for enforcing said contract or collecting said notes or any sum due under said contract; and defendant has incurred costs, including reasonable attorney's fees, in the collection of said notes and indebtedness, the sum of, to wit, two thousand ($2,000.00) dollars; whereby the defendant is indebted to the plaintiff in the sum of, to wit, fifteen thousand ($15,000.00) dollars, with interest thereof.

"(17) The plaintiff claims of the defendant the sum of to wit, fifteen thousand ($15,000.00) dollars for that heretofore, to wit, on the 23d day of October, 1913, the plaintiff and the defendant enter into a contract in writing, a copy of which is hereto attached and marked Exhibit A and made a part of this count; that shortly thereafter, to wit, December, 1913, and, to wit, January, 1914, the plaintiff delivered to the defendant on board cars at Montgomery, Alabama, a large part of the articles called for in said contract, and shortly thereafter, to wit, in March, 1914, the defendant waived the loading of the balance of said machinery on board said cars by the plaintiff and accepted it where it was situated to wit, near the western part of the city of Montgomery, Alabama, and took possession thereof, and agreed to load and ship said machinery, and to charge the expense of said loading to the plaintiff; and on, to wit, November 22, 1913, the defendant executed and delivered to the plaintiff its nine (9) promissory notes, payable to the plaintiff, and all dated November 22, 1913, five (5) for four hundred twenty-five ($425.00) dollars each, payable the 1st days of June, July, August, September, and October, 1914, respectively; one (1) for three hundred seventy-five ($375.00) dollars payable, November 1, 1914; three for twenty-five hundred ($2,500.00) dollars each, payable the 1st days of November, 1915, 1916, 1917, respectively; that defendant failed to pay any of said notes, and in accordance with terms of said contract all of the same have long since become due and are

wholly unpaid; that it was provided in said contract, and also in said notes, that if the defendant failed to pay any of said notes when due it would pay all costs and damages sustained by the plaintiff on account thereof, including reasonable attorney's fees incurred by it for enforcing said contract or collecting said notes or any sum due under said contract; and defendant has incurred costs, including reasonable attorney's fees, in the collection of said notes and indebtedness the sum of, to wit, two thousand ($2,000.00) dollars. Whereby the defendant is indebted to the plaintiff in the sum of, to wit, fifteen thousand ($15,000.00) dollars, with interest thereon."

The following are the replications:

"A. For reply to the pleas of non est factum plaintiff says that said notes and contract sued on were executed for and on behalf of defendant by W. E. Benson, who was then, and had been for several years prior thereto, president of defendant, and in active charge of the affairs of defendant in Alabama, conducting for it and in its name extensive business operations, including the buying of machinery of various kinds, and supplies and equipment, and employing men to work for defendant, and borrowing money for it, and executing notes and contracts for it and in its name, obtaining credit for it in such matters; that said Benson was the only director then living in Alabama; that the other directors resided in distant cities, and took little, if any, active or actual part in conduct of said business in Alabama; that said Benson was in effect defendant's manager or general agent, and was permitted by defendant to hold himself out to the public as authorized to deal generally for it in the business world; that plaintiff was informed of said facts, and dealt with him in good faith in accepting said notes and contracts and in selling him said machinery, and other directors of defendant knew of said sale and contract being made by him, and made no objection or protest to plaintiff; that, therefore, defendant is bound by the execution of said notes and contracted by said Benson.

"B. For further reply to the pleas of non est factum plaintiff reaffirms and adopts all of replication A to said plea down to and including the words 'protest to plaintiff'; and further says that thereupon plaintiff delivered to defendant on board cars at Montgomery, Alabama, consigned to it at Alexander City, Alabama, several carloads of said machinery, which was delivered to it by the railroad company and accepted by defendant, and part of same was hauled to defendant's sawmill at Benson, Alabama, and kept by defendant and is still in its possession; that the rest of said machinery described in said contract was accepted at Montgomery, Alabama, by defendant's president, said Benson, or by its general manager, one Lambert, under authority of said president, and two carloads of said remaining machinery were shipped by order of defendant's general manager to defendant at Benson, Alabama; that defendant has never returned, or offered to return, said machinery to plaintiff nor repudiated said contract or notes; that, therefore, defendant is bound by the execution of said notes and contract by said Benson."

Rushton, Williams & Crenshaw, of Montgomery, and George A. Sorrell, of Alexander City, for appellant.

Ball & Beckwith, of Montgomery, for appellee.

McCLELLAN, J. The appellee instituted this action against the appellant. There was judgment for the plaintiff (appellee). Counts 2 to 10, inclusive, declared upon several promissory notes dated November 22, 1913; counts 9 and 10 averring the contractual authority of the payee to declare the whole series of notes due upon default in the payment of any one of them. Counts 12 to 15, inclusive, are the common counts, claiming, in each, $10,000. The report of the appeal will reproduce counts 16 and 17, omitting the exhibit referred to therein. They are special counts on a written contract whereby, it is averred, plaintiff effected the sale of certain machinery to the defendant. In addition to a general traverse, the defendant interposed (among other special pleas) special plea A, which reads:

"A. The defendant, for answer to counts 2 to 10, inclusive, and No. 16, separately and severally, of the complaint, sayeth that the notes and contract upon which the suit is founded were not executed by it or by any one authorized to bind it in the premises, and it makes oath that this plea is true. And defendant denies the correctness of the account sued on."

We are at a loss to understand the extraneous (to the plea) reference in the last line thereof to an account, the correctness of which is there denied, unless it had some relation to the allusion, at the end of the complaint, just after count 16, to an "itemized, sworn account which is filed herewith." The plea A will be considered without regard to the reference to an account, there being nothing in counts 2 to 10, inclusive, or to counts 16 or 17, to which counts alone plea A purports to respond, by way of non est factum, with matter in bar of a recovery on the written contracts declared on in those counts.

It is stated in the brief for appellee that no general traverse of plea A was interposed by plaintiff. To plea A (non est factum) the plaintiff replied specially through special replications A and B. The report of the appeal will contain these special replications. To each of them defendant filed demurrers, among the grounds stated therein being these:

"(2) Because the facts averred in the replication do not as a matter of law show that Benson was authorized to purchase the machinery for the defendant corporation.

"(3) Because there is no averment in the replication which shows, or tends to show, that the purchaser of the machinery involved in the suit was incidental or necessary to the customary and usual operation of the defendant's business.

"(4) Because no facts are averred in the replications showing, or tending to show, that the machinery ordered or agreed to be purchased by Benson was so ordered or agreed to be purchased in the usual course of business of the corporation.

"(5) Because, for aught that appears in the averments of the replications, the purchase of the sawmill plant constituted an enlargement or extension of the defendant's business which had never been authorized by its board of directors."

The court overruled the demurrers to these special replications, and this action of the court presents the only matter assigned for error on this appeal.

The special replications A and B were designed to avoid the effect of the bar set up in special plea A, which, in its turn, was interposed to the counts declaring on written contracts. These replications sought, in legal effect, to set up an estoppel against the defendant to assert the general agent's, the general manager's (Benson, president), authority (not the corporate authority) to engage for, to bind, the corporation by this contract with the plaintiff. 10 Cyc. p. 1067, subhead 6; Second National Bank of Allenton v. Potter Co., 2 N. Y. Supp. 644; People v. Bank of North America, 75 N. Y. 547, 561. In the last cited deliverance the Court of Appeals pertinently said:

"Apparent authority operates only by way of estoppel, and can take the place of real authority only when some one has acted upon the appearances."

The actor must have "acted upon such appearances, and [has] in good faith parted with value." Authorities supra. In this jurisdiction estoppels must be specially pleaded, in actions at law as well as in causes in equity. Jones v. Peebles, 130 Ala. 269, 273, 30 South. 564, citing Code 1896, § 3295, Code 1907, § 5331; Millitello v. Roden Groc. Co., 190 Ala. 675, 678, 67 South. 420; Winkles v. Powell, 173 Ala. 46, 50, 55 South. 536; Blair v. Williams, 159 Ala. 655, 659, 49 South. 71—among others readily accessible. This plaintiff could not, therefore, have availed of the theory of estoppel under a general traverse of the plea of non est factum, even if it had interposed a general traverse, set up in special plea A. Had the plaintiff failed to specially plead the matter of asserted estoppel, a waiver would have resulted. Millitello v. Roden Groc. Co., supra. These considerations afford a complete answer to the suggestion that the action of the court in overruling the defendant's (appellant's) demurrers to special replications A and B was without prejudice to the appellant, for that the plaintiff might have offered the matter relied on under a general traverse of the averments of special plea A.

It is to be noted that neither of these special replications asserts or relies upon ratification by the board of directors of the corporation of the contract or contracts declared on in counts 2 to 10 and 16 and 17. The mere allegation, in special replication A, that some of the directors knew of the contract fell far short of averring ratification, after full knowledge, by the governing body of the corporation, or by even a majority thereof, if, indeed, a majority of the directors could informally effect that result.

[1] The third, fourth, and fifth grounds of the demurrers to these replications were well taken. The replications must, on demurrer as here, be construed most strongly against the pleader. There is in them no averment that the act of the general manager, the general agent (Benson, the president), in contracting as the mentioned counts avow, was within the usual course of defendant's business or according to the usual and customary mode in which the business was carried on. Even a general agent does not enjoy an unlimited authority, and, in the absence of a different authorization, a general agent is restricted in authority to conduct of the business in the customary way, in the usual course; and "the scope and character of the business which he is empowered to transact is, as to third persons, the extent and measure of his authority." Wheeler v. McGuire, 86 Ala. 398, 402, 5 South. 190, 191 (2 L. R. A. 808); Meecham on Agency, § 740; Louisville Co. v. Stokes, 78 Ala. 372, 375; Syndicate Ins. Co. v. Catchings, 104 Ala. 176, 187, 16 South. 46; Dadeville, etc., Co. v. Jefferson, etc., Co., 194 Ala. 683, 69 South. 918.

The averments in the replications that are descriptive of what the general manager had done, for however long, cannot be interpreted, on demurrer, as averments in pleading (not for evidential purposes) characterizing these acts as being within the usual scope and nature of the principal's business. Authorities supra. The court, therefore, erred in overruling the defendant's demurrer to special replications A and B.

It is insisted that the judgment should not be reversed because the verdict should be referred to the counts to which the particular pleading under consideration (plea A and replications A and B) were not addressed, viz. the common counts; and appeal is made to the asserted rule that a verdict in a civil case will be referred to the "good counts, rather than to the bad counts," to the end that the judgment may be sustained. The rule asserted has not been announced or approved by this court with respect to a civil action, where there was demurrer testing the sufficiency of a count which was defective only; though the Court of Appeals in Turnipseed v. Burton, 4 Ala. App. 612, 625, 58 South. 959, appears to have inadvertently made too broad a statement of the sound rule that a verdict will be referred to a count unassailed by demurrer, stating, though defectively, a cause of action, rather than to a count that stated no cause of action. Anyway, the question here arises on demurrer to subsequent pleading.

[2] The demurrer was erroneously overruled. The error cannot be avoided by recourse to a speculation that perhaps the con-

clusion to liability was predicated of some other theory expressed in different sufficient counts of the complaint.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SAYRE, JJ., concur.

SOMERVILLE, GARDNER, and THOMAS, JJ., dissent.

On Application for Rehearing.

MAYFIELD, J. On application for rehearing I have reached the conclusion that there was no reversible error in overruling defendant's demurrers to replications A and B to defendant's plea of non est factum.

These being the rulings on which the judgment was reversed on the original hearing, and the members of the court then being divided four to three, it results that the change of my vote on those rulings changes the result from a reversal to an affirmance. I therefore deem it proper to state briefly the reason which induced me to change my opinion. On a more careful examination of the replications I find that they allege facts which, if true, show the defendant did execute the contracts sued on, the execution of which the plea of non est factum denied.

[3] The replications are, therefore, in legal effect, a traverse of the plea, though in form special ones of confession and avoidance or estoppel.

[4, 5] While a demurrer might have been sustained to them without error because they were in effect mere traverses of the plea, yet overruling the demurrers to such replications is not error to reverse. No possible injury did or could thereby result to the appellant, defendant below.

[6, 7] The replications set forth a number of facts; the demurrers thereto admitted them as true. If all the facts alleged in either replication were true, the defendant did, in fact and law, execute the contracts sued on, and the plea of non est factum was therefore disproved.

In other words, had there been no special replication, but only a traverse of the plea, and the facts set forth in the replication had been proven without dispute, the plaintiff would have been entitled to the affirmative charge, with the usual hypothesis as to this plea. This being true, no possible injury could result to the defendant by overruling the demurrer to the replication; the plaintiff had to prove the facts set forth therein or he failed as to the replication.

[8, 9] It is needless to cite authorities to the proposition that overruling a demurrer to a special plea is without injury if the plea amounts to complete denial or traverse of the declaration; and the same is necessarily true as of a special replication to a plea. I

will cite two cases, however: So. Ry. Co. v. Hobbs, 151 Ala. 335, 43 South. 844; Wright v. Forgy, 126 Ala. 389, 28 South. 198.

The facts in the latter case were very similar to the facts in this case. That was a suit on a bond, and the defendant pleaded non est factum. To this plea the plaintiff replied, setting up the facts which showed the mode and manner in which the bond was executed. The defendant demurred to the replication, and his demurrer was overruled; and this court held it was without error, because nothing was set up in the replication except that which was available under the general issue or traverse of the plea.

The facts alleged in these replications are very similar to the facts proven in the recent case of Ga. Cas. Co. v. Massey, 79 South. 33,[1] and that of the case of Phillips v. Whitney, 109 Ala. 645, 20 South. 333. In both of these cases it was held that the contracts in question were properly executed by the corporation.

I am therefore of the opinion that the rehearing should be granted, the judgment of reversal set aside, and one of affirmance entered.

Justices SOMERVILLE, GARDNER, and THOMAS concur in the opinion of the writer, which results in granting the application for rehearing, and setting aside the judgment of reversal and entering one of affirmance.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., dissent.